# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SUZANNE MARGARET BASSO, | § | |
|      Petitioner | § | |
| | § | |
| v. | § | NO. 4:14-cv-00213 |
| WILLIAM STEPHENS, | § | |
|     Director, Texas Department of | § | |
|     Criminal Justice, Correctional | § | |
|     Institutions Division, | § | |
|         Respondent | § | |

## PETITIONER'S MEMORANDUM OF LAW
## CONCERNING PRINCIPLES OF 28 U.S.C. §2254

**Winston Earle Cochran, Jr.**
Attorney at Law
Texas Bar No. 04457300
SD Texas No. 14490
P.O. Box 2945
League City, TX 77574
Tel. (713) 228-0264
Email: winstoncochran@comcast.net

Attorney for Suzanne Margaret Basso

# TABLE OF CONTENTS

Table of Authorities ii

Issues Presented 1

Statement of the Case 1

    A. Procedural History 1

    B. Factual Background 2

Summary of the Argument 5

Argument 6

    A. Exhaustion 7

    B. Adjudication on the Merits 8

    C. Clearly Established Law, as Determined by the Supreme Court 10

    D. Conflict or Unreasonable Application 16

    E. Unreasonable Determination of Facts 17

    F. Presumption of Correctness 18

    G. Application of Principles to the First Ground 18

    H. Application of Principles to the Second Ground 22

Conclusion 26

Certificate of Service 27

# TABLE OF AUTHORITIES

**Cases**                                                     **Page**

*Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2005)    16

*Basso v. Quarterman*, 2009 WL 9083708 (S.D. Tex. No. H:07-3047,
    January 26, 2009)    2

*Basso v. State*, 2003 WL 1702283 (Tex. Crim. App. No. 73,672,
    January 15, 2003), *cert. denied* 540 U.S. 864, 124 S.Ct. 174,
    157 L.Ed.2d 116 (2003)    2

*Basso v. Thaler*, 359 Fed.Appx. 504 (5th Cir. 2010), *cert. denied*
    __ U.S. __, 131 S.Ct. 181, 178 L.Ed.2d 108 (2010),
    *reh'g denied* __ U.S. __, 131 S.Ct. 692, 178 L.Ed.2d 522 (2010)    2

*Coe v. Bell*, 209 F.3d 815 (6th Cir. 2000)    19-20

*Ex parte Basso*, 2006 WL 2706771 (Tex. Crim. App. No. WR-63672-01,
    September 20, 2006)    2

*Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595,
    91 L.Ed.2d 335 (1986)    passim

*Harrington v. Richter*, 562 U.S. __, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)    17

*Medina v. California*, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)    20

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)    23

*Panetti v. Quarterman*, 55 U.S. 930, 127 S.Ct. 2842,
    168 L.Ed.2d 662 (2007)    passim

*Panetti v. Quarterman*, 2008 WL 2338498 (W.D. Tex., March 26, 2008)    21

*Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)    16

*Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333,
    87 L.Ed. 1796 (1943)          19

*Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)      11

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct.. 1130,
    16 L.Ed.2d 218(1966)          19

*United States v. Fell*, 360 F.3d 135 (2nd Cir. 2004)      12

*Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)      20

*Wetzel v. Lambert*, __ U.S. __, 132 S.Ct. 1195, 182 L.Ed.2d 35 (2012)      17

## Constitutional Provisions, Statutes, and Rules

28 U.S.C. §2244      4

28 U.S.C. §2254      passim

TEX. CODE CRIM. PROC. Art. 11.071      2

TEX. CODE CRIM. PROC. Art. 46.05      passim

U.S. CONST. Amend. VIII      passim

**TO THE HONORABLE DISTRICT COURT:**

COMES NOW the petitioner, Suzanne Margaret Basso (hereinafter "Basso"), through the undersigned counsel, and respectfully submits this memorandum of law in support of Basso's petition, with this memorandum specifically addressing the manner in which the principles of 28 U.S.C. §2254 apply in this cause.

## ISSUES PRESENTED

Basso presents two grounds for relief:

1. TEX. CODE CRIM. PROC. Art. 46.05 violates the Eighth Amendment requirement of heightened reliability in death penalty cases.

2. The state district court's conclusion that Basso was competent to be executed was incorrect and unreliable, violating the Eighth Amendment requirement of heightened reliability in death penalty cases.

Both of these issues contain sub-issues, and the second issue is materially affected by the first issue.

## STATEMENT OF THE CASE

### A. Procedural History

In 1999 Basso was convicted of Capital Murder in Cause Number 816855 in the 232nd District Court of Harris County, Texas. It was alleged that Basso participated in killing Louis "Buddy" Musso for remuneration or while in the course

of committing kidnapping. Pursuant to the jury's answers to special issues, the state district court judge assessed the death penalty. The Court of Criminal Appeals of Texas affirmed the judgment and sentence on January 15, 2003. *Basso v. State*, 2003 WL 1702283 (Tex. Crim. App. No. 73,672, January 15, 2003). The Supreme Court of the United States denied Basso's petition for a writ of certiorari. *Basso v. Texas*, 540 U.S. 864, 124 S.Ct. 174, 157 L.Ed.2d 116 (2003).

Basso sought postconviction relief via TEX. CODE CRIM. PROC. Art. 11.071. The state district court judge recommended that relief be denied. The Court of Criminal Appeals denied relief. *Ex parte Basso*, 2006 WL 2706771 (Tex. Crim. App. No. WR-63672-01, September 20, 2006).

Basso filed a petition for relief under 28 U.S.C. §2254 in this Court. This Court granted summary judgment for the respondent and denied relief. *Basso v. Quarterman*, 2009 WL 9083708 (S.D. Tex. No. H:07-3047, January 26, 2009). The constitutional issues presented in this petition were not raised or discussed in that earlier petition.

The United States Court of Appeals for the Fifth Circuit denied a certificate of appealability. *Basso v. Thaler*, 359 Fed.Appx. 504 (5th Cir. 2010). The Supreme Court denied a petition for a writ of certiorari on October 4, 2010. *Basso v. Thaler*, __ U.S. __, 131 S.Ct. 181, 178 L.Ed.2d 108 (2010). A petition for reconsideration

was denied on November 29, 2010. *Basso v. Thaler*, __ U.S. __, 131 S.Ct. 692, 178 L.Ed.2d 522 (2010).

The judge of the 232nd District Court set an execution date for February 5, 2014. Basso filed pleadings seeking a determination whether Basso was competent to be executed, pursuant to *Ford v. Wainwright*, 477 U.S. 399, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) and TEX. CODE CRIM. PROC. Art. 46.05. Those included a motion, filed on October 1, 2013, to have Article 46.05 declared unconstitutional (Comp. CR-44).[1] On December 13, 2013 the district court denied the constitutionality motion (Comp. CR-54, Comp. RR I-5). A *Ford* hearing was conducted on December 13, 2013, with a brief follow-up on December 17, 2013.

On December 17, 2013 the state prosecutor requested, and was granted, permission to file proposed findings of fact and conclusions of law by January 13, 2013. Basso's counsel warned that a one-month delay would significantly eat into the time other courts would need for review, which is exactly what has happened. On January 13, 2014, the State filed proposed findings of fact and conclusions of law, which were accepted *in toto* as the trial court's findings and conclusions on January 14, 2014. The state district court judge found Basso competent to be executed.

---

[1] The state appellate record is designated as follows: "Comp. CR" refers to the clerk's record for the state appeal from the *Ford* hearing. "Comp. RR" refers to the court reporter's record from that proceeding, with Roman numerals for volume numbers.

On January 26, 2014 Basso electronically filed a lengthy state appellate brief on the appeal from the *Ford* hearing, which included a constitutional challenge to Article 46.05. That case is pending as *Basso v. State*, No. AP-77,032 in the Court of Criminal Appeals. As of the time of the filing of this memorandum, *i.e.* February 2, 2014, the Court of Criminal Appeals has not ruled.[2]

On January 30, 2014 Basso filed a petition in this Court under 28 U.S.C. §2254, presenting the two issues set forth above. These issues may be presented in a second Section 2254 petition under *Panetti v. Quarterman*, 55 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).[3]

## B. Factual Background

The facts of the offense are discussed in this Court's earlier decision and in *Basso v. Thaler, supra,* and will be incorporated by reference here. Those facts are primarily of interest here as a backdrop for current evidence, especially Basso's own statements about the offense, in order to show how far Basso's understanding differs

---

[2] There also are two other unresolved pleadings pending in the Court of Criminal Appeals as of the date of this motion. In the opinion of the undersigned counsel, those issues depend on authority which may not meet the "clearly established" clause of subsection 2254(d).

[3] Basso filed a request for leave to file, under 28 U.S.C. §2244, in the United States Court of Appeals for the Fifth Circuit on January 29, 2014. In a teleconference on January 30, 2014, it was decided that clearance from the Fifth Circuit was not required, based on *Panetti*. That position was urged by the respondent's counsel, so hopefully there is no dispute along those lines.

from what other evidence indicated. The evidence considered in the competency hearing is discussed at length in the brief filed in the Court of Criminal Appeals on January 26. It should be noted that the state district court took notice of the evidence in prior trial and habeas proceedings. A copy of Basso's state brief regarding Article 46.05 and the *Ford* hearing is attached to Basso's motion for a stay of execution, filed in this Court on January 31, 2014. In the interest of brevity, Basso incorporates that discussion by reference here, although particular evidence and arguments will be identified with specificity as needed in this memorandum.

## SUMMARY OF THE ARGUMENT

This memorandum focuses on the aspects of Section 2254 which form the framework for review. That statute creates some formidable barriers to relief, but Basso submits that those barriers are overcome in this cause.

First, although Basso has not, as of the afternoon of February 2, 2014, exhausted her state court remedies, Basso believes that could occur as soon as tomorrow, February 3, 2014. If that does not occur by the morning of February 4, 2014, Basso asks this Court to treat the situation as one meeting the alternative avenue of 28 U.S.C. §2254(b)(1)(B)(ii).

The next question is whether whatever is decided in the Court of Criminal Appeals is an adjudication "on the merits." Basso has no advance knowledge of what

to expect. Basso does not believe, however, that there is any procedural default which would result in decision which was not on the merits.

*Ford* and *Panetti* both provide a number of principles which constitute "clearly established" law which applies in this cause. All three of the reasons why *Basso* maintains that Article 46.05 is unconstitutional, and why a hearing conducted under that unconstitutional statute is unreliable, involve unreasonable applications of principles from *Ford* and *Panetti*.

The factual determinations made by the state district court also were unreasonable, and Basso can show by "clear and convincing" evidence that key points amounted to incomplete or incorrect treatment of the facts.

In the last two sections of the discussion, Basso summarizes how the principles of Section 2254 apply to the state district court's decision. How they apply to whatever may be decided by the Court of Criminal Appeals cannot be discussed at this point, for Basso's counsel does not have a crystal ball.

## ARGUMENT

This Court's review is governed by the provisions of 28 U.S.C. §2254, Section 2254, as rewritten in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The statute imposes several types of restrictions which are germane in this cause. The manner and extent of the application of those principles is addressed

below.

## A.    Exhaustion

Section (b)(1) creates a general rule that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

> (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)    (I) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

What constitutes exhaustion is explained in subsection (c) of the statute.

At the moment this memorandum is being filed, Basso has not exhausted her state court remedies. The Court of Criminal Appeals could issue a ruling at any time before Basso's scheduled execution, or could stay the execution and take more time to make a ruling. The Court of Criminal Appeals even could grant substantive relief. Basso simply does not know.

There is, however, a legitimate question whether the state process is effective to protect Basso's rights. Basso has a right to not be executed if the state district court's decision that she is competent to be executed was tainted by application of a statute which violates the Eighth Amendment. In *Ford v. Wainwright*, part of the

relief granted was a prohibition of Ford's execution until a constitutionally valid process of determination was employed. The question then becomes whether existing "circumstances" render the state process ineffective. Basso submits that the "time crunch" which would occur if a state ruling is not issued by the morning of Tuesday, February 4, 2014, at the latest, would make it practically impossible for Basso to have adequate federal court review, given that there are two levels of appellate review beyond this Court which have to be considered. Formatting and delivering pleadings in a cogent and acceptable manner for two additional levels of federal review becomes virtually impossible in just one day, even though the constitutional arguments Basso raises are worthy of federal court scrutiny at all levels.

Subsection (b)(2) explicitly provides that a federal court may deny an application on the merits despite a lack of state court exhaustion, but it is silent as to the power of a federal court to grant the application in that situation. That power, Basso believes, is implicit in subsection (b)(1)(B)(ii).

### B. Adjudication on the Merits

Section 2254(d) provides specific rules for review of state court decisions "on the merits." This term does not merely refer to findings of fact, but also includes conclusions or applications of law. The state district court only had one designated conclusion of law," although the last three findings of fact were really conclusions

of law in the sense that they applied law to facts. A primary complaint that Basso has made before the Court of Criminal Appeals – and before this Court, by incorporation herein of the brief filed in the Court of Criminal Appeals – is that some key principles were ignored by the state district court.

First, a significant legal concept that was ignored by the state district court (which articulated no conclusion of law on the subject), concerns the significance of Basso's culpability as a party, rather than as a direct actor. At Basso's trial there was no evidence as to who actually killed Louis "Buddy" Musso, and both a sole-actor theory and a party theory were submitted to the jury, which returned a general verdict. Basso contends that, with respect to party culpability, the state district court judge failed to make an adjudication "on the merits." This omission was significant, for if Basso is correct that her role as a party needs to be considered in determining the "rational understanding" prong of the test, then one of the most pertinent aspects of the inquiry was ignored.[4]

Party culpability is not the only concept ignored in the state conclusion(s) of law, however. The state district court judge entered no specific conclusions of law

_____

[4] In fact, the mere possibility that one possible legal basis for conviction – and for the punishment – could be unconstitutional is enough to create constitutional harm in this cause. *Cf. Stromberg v. California*, 283 U.S. 359, 367-368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (unconsti-tutionality of one clause in statute banning emblems of opposition to government required reversal where general verdict of guilty might have rested upon that clause).

concerning the significance of a low I.Q. and of various forms of mental illness. It is impossible to tell whether the state district judge believed such concerns are outside the scope of what is required by *Ford* and *Panetti* (which would be incorrect) or whether the judge believed, on the evidence presented, that those concerns were not present. The latter would be unreasonable, given the nature and extent of the evidence presented.

### C.   Clearly Established Law, as Determined by the Supreme Court

The heart of the dispute here probably is the applicability of subsection (d)(1). That subsection provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; ...

Without waiving the earlier argument that some important aspects of the issues were not "adjudicated on the merits," Basso submits that the state district court's decision fits the ground for relief in subsection (d)(1).

The first aspect of the question concerns whether there is "clearly established Federal law, as determined by the Supreme Court of the United States." *Ford v.*

*Wainwright, supra* provides such law with respect to the inclusion of competency to be executed within the scope of the Eighth Amendment, and with respect to the historical concept underlying that doctrine. *Ford* also establishes that a person is not competent if he or she merely understands the fact of an upcoming execution. The person must also understand the reason why he or she is so culpable that she deserves to be executed. It cannot be emphasized enough that *Ford* did not simply create a "yes or no" prophylactic rule.

A crucial Eighth Amendment concept here is the principle that death penalty cases required a greater degree of reliability. *United States v. Fell*, 360 F.3d 135 (2nd Cir. 2004) listed numerous Supreme Court cases applying that principle, making it "clearly established" Supreme Court doctrine. *Ford, supra* at 411-412 held that this "stringent standard" applies to the issue of competency to be executed.

One other pearl in *Ford* needs to be noted. In its discussion of the historical and moral foundation for its holding – in Part II, which had the support of five justices – *Ford* stated: "For today, no less than before, we may seriously question the retributive value of executing a person who has no comprehension of why he has been singled out and stripped of his fundamental right to life." *Ford, supra* at 409, 106 S.Ct., at 2601. The reference to being "singled out" suggests that the person must understand what it was about *his own conduct* which calls for the death penalty.

The phrase "singled out" does not reasonably permit any other interpretation.

In the wake of *Ford*, the decision in *Panetti* helped to clarify what was "clearly established" in *Ford*, as well as adding some "clearly established" law in its own right. *Panetti* pointed out that a portion of *Ford* – specifically, Parts I and II – *did* receive the votes of five justices, so any resort to the concurring opinion of Justice Powell in *Ford* under a "narrowest ground" theory must proceed with care.

The trial court's procedural errors were the main target in *Panetti*, as Panetti was denied basic procedural requirements. That was not a major problem in Basso's case, although one such problem should be noted: Basso was not allowed to question psychiatrist Mark Moeller, M.D. on redirect, thus depriving Basso of the chance to test or clarify any of Dr. Moeller's answers given under examination by the State.

What matters more is that the *Panetti* opinion also fleshed out the concept of a "rational understanding." *Panetti* noted that there was "much in the record to support the conclusion that [Panetti] suffers from severe delusions." *Id.*, at 956. *Panetti* then crisply summarized the issue:

> The legal inquiry concerns whether these delusions can be said to render him incompetent. The Court of Appeals held that they could not. That holding, we conclude, rests on a flawed interpretation of *Ford*.

*Id.* Zeroing in on the portion of Justice Marshall's opinion in *Ford* which did receive five votes in support, *Panetti* noted that a majority in *Ford* had recognized that the

Eighth Amendment "places a substantive restriction on the State's power to take the life of an insane prisoner." *Panetti*, quoting from *Ford*, 477 U.S., at 405. *Substantive*, not just procedural. After *Panetti*, the Supreme Court's clear position is that the Eighth Amendment does call for an inquiry into the role of mental illness, especially mental illness which may generate delusional thinking.

Going farther, *Panetti* specifically rejected the formulaic two-question approach which is articulated in the Texas statute and which was followed by the state district court in Basso's hearing:

> The Court of Appeals' standard treats a prisoner's delusional belief system as irrelevant if the prisoner knows that the State has identified his crimes as the reason for his execution. ... Yet the *Ford* opinions nowhere indicate that delusions are irrelevant to "comprehen[sion]" or "aware[ness]" if they so impair the prisoner's concept of reality that he cannot reach a rational understanding of the reason for the execution. If anything, the *Ford* majority suggests the opposite.

*Panetti, supra*, at 958, 127 S.Ct. at 2861. In that statement, a majority of the Supreme Court made it clear it is not sufficient, for Eighth Amendment purposes, that Basso (or anyone else in the same situation) can "identify his [or her] crimes" as the reason for an execution.[5] As construed in the state district court, however, that limited understanding seemed to be all the Texas statute required. In the same vein, the Supreme Court said in *Panetti* that the "principles set forth in *Ford* are put at risk by

---

[5] The plural "crimes" was used in *Panetti* because there were multiple victims.

a rule that deems delusions relevant only with respect to the State's announced reason for a punishment." *Panetti, supra* at 958, 127 S.Ct. at 2861. The term "announced reason," in this context, can only mean what is publicly declared in the indictment, the verdict, and the judgment. *Panetti* also repudiated a "strict test" (which would include a two-question test permitting only yes/no answers) that "treats delusional beliefs as irrelevant" after simplistic questions are answered.

Furthermore, *Panetti* referred to "psychological dysfunction" that may have resulted in Panetti's failure to appreciate the connection between the petitioner's crime and his execution." *Id.*, at 960, 127 S.Ct. at 2862. That statement, adopted by a majority of Supreme Court, is what would be called a "three-bagger" in baseball. First, the Supreme Court used the term "psychological dysfunction," neither limiting its concern to the affliction currently called "insanity" nor demanding the minutiae of a disorder-specific diagnosis. Second, the Court realized that a "dysfunction" may be a causal factor in delusional thinking; the fact that there is an intermediate causal step between the underlying disorder and a lack of understanding does not make the dysfunction irrelevant. Third, the question comes down to understanding the connection between "the petitioner's crime," *i.e.* his or her own conduct, and the justification for execution.

Three other more insights in *Panetti* also should be considered "clearly

established" law for present purposes, either standing alone or in reinforcement of parts of *Panetti* discussed above. First, *Panetti, supra* at 960 referred to a "psychotic disorder" as the issue, following that up with reference to "a severe, documented mental illness that is the source of gross delusions preventing him from comprehending the meaning and purpose of the punishment to which he has been sentenced." The terms "disorder" and "mental illness" suggest that a narrow interpretation of what constitutes relevant "sanity" should not be applied. Furthermore, the specific reference is to mental illness which is a source of delusions. While there was a dispute in this cause whether Basso suffers from a "delusional disorder," per standardized clinical criteria, that is not the question. The question, in light of the specific wording of *Panetti*, embraces disorders which can produce delusional thinking. This is the second passage in *Panetti* affirming that principle.

Second, *Panetti* observed that "[e]xpert evidence may clarify the extent to which severe delusions may render a subject's perception of reality so distorted that he should be deemed incompetent." *Panetti, supra* at 962, 127 S.Ct. at 2863. The need to consider such professional insights should be treated as "clearly established" law after *Panetti*. In this cause, Dr. Quijano stated without contradiction (and without being addressed in the findings of fact) that Basso could, depending on stress and on the absence of medication, be delusional.

Third, *Panetti* cited both *Roper v. Simmons*, 543 U.S. 551, 560-564, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) and *Atkins v. Virginia*, 536 U.S. 304, 311-314, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) as "precedent to guide a court conducting Eighth Amendment analysis." *Panetti, supra* at 962, 127 S.Ct. at 2863. The cited portion of *Atkins* applied the "evolving standards of decency" concept to the execution of a mentally retarded person. It is true that Basso cannot make an actual *Atkins* claim because she was not diagnosed as being retarded before the age of 18, nor was she able to show adaptive deficits – partly because the trial court judge did not permit the topic of how one determines adaptive deficits in prison to be explored with Dr. Quijano. But that still leaves a person's I.Q. as a relevant consideration under *Panetti*. In *Roper v. Simmons*, the "evolving standards" concept was applied to forbid the execution of a 17-year-old boy, so its citation as "guidance" in *Panetti* is further indication that the more modern view of what constitutes mental illness, not narrow or archaic concepts of what amounts to "insanity," should be considered in addressing this aspect of the Eighth Amendment.

### D. Conflict or Unreasonable Application

Once the applicable "clearly established" law is identified, as in Part C above, the remaining inquiry is whether the state court decision is either "contrary" to such law, or is an "unreasonable application" of it. Given that there are really just two

fountainhead cases, *Ford* and *Panetti*, and given that each person's situation must be evaluated in terms of his or her own mental condition, most instances where the issue arises will be concerned with "unreasonable application" of those cases.

Quoting from *Harrington v. Richter*, 562 U.S. __, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), the Supreme Court explained in *Wetzel v. Lambert*, __ U.S. __, 132 S.Ct. 1195, 182 L.Ed.2d 35 (2012) that this is a deferential standard:

> Under §2254(d), a habeas court must determine what arguments or theories supported ... the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

This approach favors Basso's position, given that some important legal issues were simply ignored in the state district court's findings of fact and conclusions of law. No deference is due to legal "theories" which were neither articulated nor applied.

### E.     Unreasonable Determination of Facts

Section 2254(d)(2) permits relief from a state court adjudication on the merit if it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The analysis sometimes is oversimplified by statements to the effect that it is not enough for the state court to be "incorrect," as if Congress intended the word "unreasonable" merely to be a superlative, *i.e.* "very, very wrong." The word "unreasonable" more likely was

chosen to take into account the fact-finding process, as well as the substance of the evidence. Such factors as the fairness of the hearing, the thoroughness and fairness of factual findings, and the connection between findings and conclusions all should matter. The extent to which an unconstitutional statute impeded the fact-finding surely should be taken into account. Basso submits that application of an unconstitutional law, to the extent that it restricts the presentation and consideration of evidence, lead to a factual determination which is *per se* unreasonable.

## F.     Presumption of Correctness

Subsection (e)(1) of Section 2254 assigns a state court's factual determination a presumption of correctness, which can only be overcome by "clear and convincing evidence." The term "clear and convincing" is illuminated by *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 737, 86 S.Ct.. 1130, 1145, 16 L.Ed.2d 218(1966):

> Under this standard, the plaintiff in a civil case is not required to satisfy the criminal standard of reasonable doubt ...; neither may he prevail by meeting the ordinary civil burden of persuasion. He is required to persuade by a substantial margin, to come forward with "more than a bare preponderance of the evidence to prevail." *Schneiderman v. United States*, 320 U.S. 118, 125, 63 S.Ct. 1333, 1336, 87 L.Ed. 1796 (1943).

## G.     Application of Principles to the First Ground

Basso has maintained in the state courts that Art. 46.05 violates the Eighth Amendment, in that it does not assure heightened reliability for death penalty cases.

On the contrary, the statute impedes, and even curtails, a reliable determination.

The first constitutional flaw in the statute is that it requires Basso to prove a lack of understanding as to both prongs, *i.e.* a lack of understanding that her execution is imminent and a lack of understanding of the reason for the execution. It became clear in *Panetti* that a failure to understand as to *either* prong is a sufficient reason to set off the execution. In fact, *Panetti* contained lengthy discussion of what is necessary for a rational understanding. A strict reading of the statute makes all of that discussion in *Panetti* superfluous.

The second constitutional flaw lies in the assignment of the burden of proof to Basso, imposing a preponderance burden. As stated in *Coe v. Bell*, 209 F.3d 815, 827 (6th Cir. 2000), "the Supreme Court has never established who bears the burden of proof in a competency-to-be executed claim." That has not changed since *Coe*. Thus there is no "clearly established" law, for Section 2254 purposes, specifically addressing the burden of proof. There is, however, an unreasonable application of the governing principle stated in *Medina v. California*, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). *Coe, supra* at 827 observed that *Medina* "instructed that a state's procedure regarding the burden of proof in the criminal context will not be prohibited unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Coe* then interpreted

*Medina* as permitting such a burden of proof in this context.   When Medina is combined with Ford, however, it is cleat that the opposite conclusion should be reached.   If it says nothing else, *Ford* says the principle of not executing the "insane" *is* deeply rooted in the legal traditions and moral conscience of America.

Returning to Panetti's case, on remand from the Supreme Court he "concede[d] he bears the burden of proof in these proceedings." *Panetti v. Quarterman*, 2008 WL 2338498 (W.D. Tex., March 26, 2008).[6] Why Panetti made that concession is a mystery.   Hopefully it was not due to agreement with the faulty notion, expressed by the federal district judge in *Panetti*, that there is a "presumption of sanity" (meaning, in this context, trial competency rather than sanity during the offense) which must be "rebutted" in the ultimate determination under *Ford*. The district court judge drew upon footnote 6 in Justice Powell's concurring opinion. As stated in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), language in footnotes is "not controlling." Furthermore, *Coe, supra* at 828 did *not* read the footnote as applying to the ultimate determination, but only to the "threshold" showing. The whole notion of the ultimate determination being governed by a "presumption of sanity," lingering until the eve of execution from a trial-stage determination made

---

[6] After that concession was made, the burden-of-proof question did not arise in the Fifth Circuit's subsequent decision.

many years earlier, is incorrect and is unsupported by any specific holding of the Supreme Court. It nevertheless was a factor in this cause, for in Basso's hearing the judge said Basso was "presumed to be competent" and Basso had to "prove otherwise" (Comp. RR I-68).

Most important of all, *Ford, supra* at 411 observed: "In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability." Making Basso, or any other mentally ill person, meet a preponderance of evidence standard violates that clearly established principle. A burden to *raise the issue* is appropriate.

A third constitutional flaw is that Article 46.05 fails to comply with *Panetti*, in that a rigid two-pronged approach does not give adequate consideration to the role of delusional thinking and other forms of mental illness. There is much more to *Ford* and *Panetti* than just a person's ability to understand two questions. Consider the numerous statements in those cases, as discussed in Part C of this memorandum.

This cause presents an interesting factual variation on *Ford* and *Panetti*, in that Basso's jury charge, as well as the evidence and prosecutorial argument, incorporated culpability as a party. *Ford* and *Panetti* make it clear that a rational understanding refers to an understanding of how the person's own conduct may justify the death penalty. Thus there is a particularly significant departure from the Supreme Court's

case law with respect to a lack of understanding as to how Basso's conduct related to that of other participants in the abuse of Musso. Her explanation at the *Ford* hearing cannot be squared with the trial evidence. Either Basso's understanding was delusional, or the State's trial evidence is incorrect. If it is Basso's understanding that is wrong, she should not be executed at this time.

The flaw is inherent in the statute, as the key statutory verb "understands" is not defined to include the issue of delusional thinking (or low intelligence, disorders, or party culpability), making application of the statute arbitrary and inconsistent. While some state courts might take a history of delusional thinking into account, but in Basso's case, the trial court judge was primarily interested in "Yes" or "No" answers to the questions framed by the statute – even interrupting the questioning about mental illness to make sure there were direct answers to the two statutory questions (Comp. RR I-178, 240-241). One cannot condemn a judge for reading a statute as it is literally written, but that means the statute is constitutionally defective, and that defect threatens to cost Basso her life.

## H. Application of Principles to the Second Ground

The second ground is very fact-intensive, so Basso incorporates herein the long discussions of the facts and the findings of fact which are presented in Basso's state appellate brief. Two overarching observations will be made here.

First, a fair reading of the record shows that the district court conducted the hearing under the assumption that the narrow, two-question approach taken in the statute defined what evidence was relevant. The state district court repeatedly cut off questioning designed to probe the nuances of mental health disorders and how they might relate to delusional thinking. The state district court did not allow redirect questioning of Dr. Moeller, which would have allowed Basso's counsel to dig deeper into the insights which were brought out in the prosecutor's questioning. The findings of fact contain omissions which indicate that the narrow, two-question approach governed the findings. There is no escaping the reality that the findings and conclusions were materially affected by the statutory framework employed by the state district court. Thus the invalidity of the statute, for reasons already discussed, tainted the actual determination of the *Ford* issue in Basso's case. It is comparable to a state district court writing findings and conclusions regarding a confession, but using case law predating *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) as a guide. As a result, both the factual determinations and the application of law were unreasonable.

Second, there are certain sub-issues on which the state district court made no factual finding. The findings say nothing whatsoever about Basso's understanding of how her conduct related to that of the codefendants, even though that relationship

is what really defined Basso's own conduct – and in turn defines what Basso must understand, under *Ford* and *Panetti*. As to this aspect of the issue, there is no "adjudication on the merits," and this Court owes the state court no 2254(d) deference on the topic. Similarly, six important matters which were completely ignored in the state district court findings are listed in Basso's incorporated state brief. No deference is due on those non-findings either. One of those concerned Dr. Quijano's point that the mental health disorders which had been diagnosed, at various times and by different experts, could have a cumulative effect on Basso's rational understanding of why she faces execution (Comp. RR I-191). The fact that the state district court did not want to address that, and repeatedly sustained the prosecutor's objections to mental health issues, about says it all about the reasonableness and fairness of the state district court determination.

Third, as to those findings which do exist, Basso's burden in overcoming a subsection (e)(1) presumption is, as indicated in *United Mine Workers*, "more than a bare preponderance of the evidence," but not proof beyond a reasonable doubt. The incorporated brief attacks several findings in detail, and all of those findings should be scrutinized under this standard, which is not as demanding as prosecutors sometimes claim.

One matter, in particular, deserves special attention in this regard. Findings 32

and 34 deal with Basso's innate intelligence. Finding 32 selectively noted Dr. Moeller's opinion, in his written report, that Basso has "above average" intelligence. Far more than a preponderance of the evidence indicates the contrary. Her school testing records and grades, some of which were admitted as exhibits at the Ford hearing, indicate that she was a poor student. Moeller admitted that he had not seen the childhood records. Basso's I.Q. tested in November, 2013 at 55, and although that seemed inconsistent with her general presentation, not one of the three expert witnesses actually said the test results were invalid. Finding 34, stating that the55 IQ score was "unreliable," was not supported by anything other than the respective experts' surprise and the absence of a "malingering assessment" component in the I.Q. testing. Actually Stephanie Kosut's repetition of a memory test provided the next best thing. As Kosut explained, divergent scores would indicate a faker. It is likely a faker would try to alter both tests. Weighed against mere "surprise" and conjecture, the historical evidence, the I.Q. test, and the use of an alternative method to determine faking presented far more than a preponderance of evidence to show that Basso's intelligence was well below average, not above it.

There is one final consideration on which Basso also undoubtedly met the "clear and convincing" standard. Dr. Moeller indicated that additional testing, over a longer span of time, would provide a more reliable evaluation (Comp. RR I-230).

No one disputed that.  Why rush to judgment on Basso?

## CONCLUSION

Wherefore Basso prays that the writ of habeas corpus be granted and that this cause be remanded to the state district court, with instructions to withdraw the death warrant.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Winston Earle Cochran, Jr.
Winston Earle Cochran, Jr.
Attorney at Law
Texas Bar No. 04457300
SD Texas No. 14490
P.O. Box 2945
League City, TX 77574
Tel. (713) 228-0264
Email: winstoncochran@comcast.net

Attorney for Suzanne Margaret Basso

</div>

## **CERTIFICATE OF SERVICE**

I certify that a copy of this memorandum is being e-mailed to counsel for the respondent at the following address on February 2, 2014:

Ellen Stewart-Klein
Office of the Attorney General of Texas
Postconviction Litigation Division
P.O. Box 12548
Austin, TX 78711-2548
Email: "Ellen Stewart-Klein"<Ellen.Stewart-Klein@texasattorneygeneral.gov>


/s/ Winston Earle Cochran, Jr.
Winston Earle Cochran, Jr.