FILED IN
COURT OF CRIMINAL APPEALS

January 22, 2014

ABEL ACOSTA, CLERK

IE COURT OF CRIMINAL APPEALS

TRIAL COURT NO. 816855

3 _____

4 SUZANNE BASSO             )(    IN THE DISTRICT COURT OF

5 APPELLANT

6

7 VS.                       )(    HARRIS COUNTY, T E X A S

8

9 THE STATE OF TEXAS        )(    232ND JUDICIAL DISTRICT

10 APPELLEE.

11 _____

12

13                    E X H I B I T S

14                 VOLUME 3 OF 3 VOLUMES

15

16 _____

17

18

19               Arlene F. Webb, CSR

20               1201 Franklin Street

21               232nd District Court

22               Houston, Texas 77002

23

24

25 Proceedings reported by Machine Shorthand:

1  **A P P E A R A N C E S:**

2  **FOR THE STATE:**

3  Ms. Lynn Hardeway

4  Texas Bar No. 08948520

5  Ms. Roe Wilson

6  Texas Bar No. 14500600

7  1201 Franklin, Sixth Floor

8  Houston, Texas 77002

9  713-755-5800

10  **FOR THE DEFENDANT:**

11  Mr. Winston Cochran

12  Texas Bar No. 04457300

13  P. O. Box 2945

14  League City, Texas 77574

15  713-228-0264

16  _____

17          BE IT REMEMBERED that on the 13th day of

18  December, 2013, in the above-entitled and numbered

19  cause, came on for Hearing, before the Honorable MARY

20  LOU KEEL, Judge Presiding of the 232nd Criminal District

21  Court of Harris County, Texas; and the State appearing

22  by Counsel and the Defendant, appearing in person and/or

23  by Counsel, announced ready; and all preliminary matters

24  having been disposed of, the following proceedings were

25  had, viz:

# MARK S. MOELLER, M.D.

6300 WEST LOOP SOUTH, SUITE 680
BELLAIRE, TEXAS 77401
PHONE: (713) 661-4670
FAX: (713) 661-4672

## CONFIDENTIAL

### Forensic Psychiatric Evaluation

Defendant: Suzanne Basso, TDCJ # 999329
DOB: 5/15/1954
SPN: 00012371
Date of Evaluation: 11/22/13
Date of Report: 11/27/13

## Reason for Evaluation

This evaluation was performed at the request of Ms. Lynn Hardaway of the Harris County District's Attorney's Office. I was asked to perform a mental health evaluation of the defendant and render an opinion as to her present **Competency to be Executed**. Pertinent standards were set forth in the Texas Code of Criminal Procedure Article 46.05 and Panetti V. Quartermann, 551 U.S. 930 (2007).

Texas Code of Criminal Procedure Art. 46.05 (a) provides that "[a] person who is incompetent to be executed may not be executed." Subsection (h) of that statue further provides that "[a] defendant is incompetent to be executed if the defendant does not understand: (1) that he or she is to be executed and that the execution is imminent; and (2) the reason he or she is being executed."

Ford v. Wainwright, 477 U.S. 399, 106 S. Ct. 2595, 91 L.Ed.2d 335 (1989) established that the "cruel and unusual punishment" clause of the Eight Amendment forbids the execution of an inmate who is insane at the time of the pending execution, regardless of whether that inmate was sane at the time of the offense and competent to stand trial at the time of the trial." In Panetti v. Quartermann, 551 U.S. 930, 127, S. Ct. 2842, 168 L.Ed.2d 662 (2007) "the majority found "no support" in Ford "for the proposition that a prisoner is automatically foreclosed from demonstrating incompetency once a court has found he can identify the stated reason for his execution. A prisoner's awareness of the State's rationale is not the same as a rational understanding of it."

## Records Reviewed and Additional Information

- Floyd L. Jennings, J.D. Ph.D. letter to Jim Leitner (4/28/99)
- Jerome B. Brown, Ph.D. report to the Honorable Mary Lou Keel (8/18/99)
- Psychological Forensic Evaluation (11/12/13) – Walter Y. Quijano, Ph.D.
- TDCJ Psychosocial Evaluations (9/4/2008, 8/17/12, 9/14/12)

STATE'S EXHIBIT
PENGAD 800-631-6989

- "Trial Summary" – provided by ADA Lynn Hardaway
- Competency Hearing (8/23/99)
- Punishment Phase (8/30/99)
- Motion for a new trial (10/22/99)
- "Respondent's Original Answer" (3/21/02)
- Correctional Managed Care Outpatient Mental Health Services Notes (2/26/08 – 11/6/09, 8/14/12 – 9/14/12, 1/23/13 – 8/14/13)
- Conversations with Estelle RMF unit manager, Ms. Basso's therapist and Ms. Basso's treating psychiatrist
- Affidavits provided by Lynn Hardaway, ADA.

## Statement of Non-Confidentiality and Non-Treatment

I explained to Ms. Basso that I would be performing a psychiatric examination of her with specific attention to whether she understood that she was to be executed and why. I explained that what she told me was not confidential and that I would be preparing a report of my evaluation for the District Attorney's office and that the report would likely be viewed by others. I also explained that I would not be treating her or acting as her physician in anyway. I told her that she could stop the interview at any time. She understood the purpose of the evaluation, the limits of confidentiality and my lack of a patient-doctor relationship with her. She understood each of these issues and agree to proceed.

## Pertinent History

Ms. Suzanne Basso is a 59 year old, married, incarcerated female who was convicted of murder on August 27, 1999 and sentenced to death on September 1, 1999. The defendant was charged with and found guilty of capital murder in the death of Louis "Buddy" Musso, a mentally disabled man.

The defendant has been evaluated many times and many witness statements have been taken. Her history, as presented herein, is according to records and Ms. Basso herself. It is clear that she has made up or amplified many aspects of her early life and the truth of her childhood and adolescence may never be known. She was born and raised in Albany and Schenectady, New York. She was raised by her mother and stepfather(s) and was likely a victim of childhood sexual abuse. She was taken from her mother at about 14 years of age and placed in a shelter and then a children's home. School records stated that Suzanne desired attention desperately and fabricated stories.

Ms. Basso married James David Peek in 1972 and the couple had two children, Mary Anne Margaret Peek and Harold John Peek. Records and affidavits assert that both children were severely physically and sexually abused by their parents. James David Peek was convicted of sexually abusing the children and served 11 or so months in jail. Suzanne Basso's daughter

testified that Suzanne was not prosecuted because "She talked her way out of it." The evening that Mr. Peek was taken to jail, Suzanne told her daughter that she was a "no good little bitch" for breaking up the family and she took her to a mental facility. Ms. Basso then eventually gave both of her children over to Social Services in North Carolina. She and her brother lived with multiple foster families. After Mr. Peek was released, the couple resumed their lives together and eventually moved to Texas.

The defendant met Carmine Basso in the early 1990's and she began working for his security firm as a receptionist. The business provided security for convenience stores and also apprehended bail jumpers. The defendant and Mr. Basso were sexually involved, reportedly with her husband's knowledge. After Basso died in the late 1990's, the defendant began using his name and took over the business. In 1998, Ms. Basso allegedly lured a mentally retarded man, Louis "Buddy" Musso, to Houston. She was charged in 1998 with killing him as part of a remuneration scheme. Musso was horribly tortured before he died.

Ms. Basso's medical and psychiatric history is comprehensive. She first received mental health treatment for depression from doctors affiliated with the armed forces. At the time, her husband was on active duty with the USMC. She has been treated with Triavil, Zoloft, trazadone and Prozac. During periods of agitation while in TDCJ, she has been given intramuscular injections of Haldol, an antipsychotic. She has received mental health services through TDCJ since 1999 or thereabouts and her current diagnoses are "major depression – recurrent" and "borderline personality disorder." She has been diagnosed with delusional disorder, dissociative disorder, malingering, factitious disorder and conversion disorder in the remote past. There is no history of substance abuse. Her medical history is also comprehensive. There was testimony during her punishment phase, that between 1981 and 1995, she had 45 separate ER visits or admissions to the hospital. Most visits were for nausea, vomiting, pain, and sensory problems. An expert testified that the defendant likely had factitious disorder.

Later, after incarceration, she alleged that she had been beaten by guards at the Harris County Jail and had lost use and feeling of her legs. She became completely dependent on others and became incontinent of bowel and bladder. It is unlikely that there is any physical basis for her assertions and she was not cooperative with evaluations of her "paralysis." Remarkably, she is truly crippled now due to not walking and both of her feet are grossly atrophied and deformed. She is currently living in a medical facility run by TDCJ and nurses and aides provide her with baths, incontinent care and wound care for bed sores.

## Conversation with Treating Psychiatrist

I spoke with Marciano Limsiaco, M.D. of UTMB. He has known and treated the defendant for 4 or 5 years. His working diagnoses for her are major depressive disorder – recurrent and borderline personality disorder. He treats her with fluoxetine (Prozac) 40 mg. twice a day. He said that under stress, she regresses and stops eating or makes allegations about

being suicidal. Her voice changes and she acts like a child. She has only had 2 episodes in the last few years and one of them started right after a warden visited her. The episodes have always remitted without much additional treatment or medication. He has discussed her care with the psychiatrists on the inpatient unit and all parties agree that she is not delusional or psychotic, even at her worst. With regard to her physical symptom of paralysis and her deformed feet, Dr. Limsiaco said he has discussed those with the defendant's internist and that there does not appear to be any medical basis for her problems. He adds that, in spite of being informed of her execution date, she is doing well and not acting out.

## Conversation with Treating Therapist

I spoke with Ms. Judy Lilley, M.S., a mental health clinician. She has treated Ms. Basso for about 1 ½ years. She described her as "cooperative and depressed." She said that to her knowledge, the defendant has never made a potential lethal suicide attempt. She said Ms. Basso's support is from religious affiliations. Reportedly, the defendant reads scripture at times and writes letters to several organizations and "maybe a priest." Ms. Basso has known about her execution date for a few months and is "handling it well." Ms. Lilley described her as a realistic and more religious since her date was set.

## Conversation with Mental Health Unit Manager

I spoke briefly with Jeffrey Sanders, MA, LPC. He is the mental health unit manager at the Estelle Regional Medical Facility. He has known Ms. Basso for quite a while. He said that she is handling knowing her execution date without much difficulty. He said that, in the past, she was very needy and attention-seeking.

## Review of Affidavit of Sally Knapp

Ms. Knapp is a correctional officer at the Estelle Unit in Huntsville, Texas. She stated that she knows the defendant well. Ms. Knapp stated that Ms. Basso fills out commissary slips without assistance and can groom herself and her requests for assistance are appropriate. Ms. Knapp said she saw Basso after she had visitors informing her of her February 5, 2014 execution date. She was upset yelling and said, "Take me now."

## Review of Affidavit of Patricia Glass

Ms. Glass is a correctional officer at the Estelle Unit in Huntsville, Texas. She stated, "Other than when Basso first arrived at this unit years ago, I have not observed Basso exhibiting behavior where I thought that she was hallucinating or having delusions. I have been around inmates that have diagnosed mental problems but Basso definitely does not fall into that category."

## Review of Affidavit of Diane Livanec

Ms. Livanec is a correctional officer at the Estelle Unit in Huntsville, Texas. She stated, "Other than the instances where she has acted out for a period of time, Basso's behavior has been normal. She has never said anything about snakes. Basso is aware of what is going on around her and the reason that she is incarcerated. Basso's conversation with others is appropriate and relevant to what is going on around her."

## Review of Affidavit of Nathaniel Robertson, M.D.

Dr. Robertson is Ms. Basso's treating physician for physical complaints and he has seen her monthly for about two years. He stated, "She has never related any auditory or visual hallucinations to me... In my notes, I documented a conversation with Basso regarding the scheduling of her execution date. Basso was very calm during this conversation and knew the implication of her execution date being schedules. Basso is aware of the fact that she is going to be executed and that her execution will cause her death."

## Mental Status Examination

I met with the defendant for about an hour in a day room at the Estelle Regional Medical Facility in Huntsville. There were no barriers. A guard was stationed approximately 25 feet away. Ms. Basso was handcuffed and the cuffs were attached in the front of her torso, to a leather belt that went around her chest. She was in a geri-chair. The defendant was well-groomed and covered with a light blanket. She was morbidly obese. She made eye contact appropriately and she was cooperative with the evaluation. Her voice was of normal rate, volume and rhythm. She spoke with a mild Irish-Scottish accent. When I explained the purpose of my evaluation, as well as the limits of confidentiality and treatment, she said, "I got a letter in the mail. They said I hurt somebody and he died. They are going to execute me on February 5, 2014."

Her mood was "Not bad." She complained of boredom and complained about her upcoming execution. "If I didn't do it, I shouldn't be punished." Her affect was full and flexible and appropriate. She became sad-looking when talking about her early life and her incarceration. She smiled and joked appropriately with me and the staff that brought her into the room and took her back out. Her thought content was negative for any hallucinations or delusions. Her thought process was logical and goal-oriented. There was no evidence of disorganized speech or behavior. She complained that since her "strokes," her memory was poor. However, she discussed recent and remote events with great detail and probable accuracy. She described her diagnosis of sarcoidosis in 1982 and her stroke evaluations and tests in 1994 and 1996 in great detail and credibility. She described treatment and medications for her depression, both in the free world and in jail. She told me where her son, "Harold John," was and what he was charged with and what his punishment is.

The defendant's orientation was completely intact. She denied any impulses or intent to hurt herself or others. Her intelligence is likely above average. In discussing her security consultant business (in the 1990's), she explained to me that bail bond work was "quite lucrative" until her partner, Carmine, botched an apprehension and the company lost its contract with Harris County. Her memory was quite good.

I examined her feet (with her permission). They are grossly deformed in a "club-foot" fashion.

## Summary and Opinions

In my medical opinion, Ms. Basso's psychiatric diagnoses are:

        Axis I: Major Depressive Disorder – recurrent - in partial remission
              Factitious Disorder with combined psychological and physical symptoms
              Malingering
        Axis II: Personality Disorder NOS (Borderline and Antisocial)
        Axis III: Obesity, Bilateral club feet, asthma, GERD.
        Axis IV: Chronic and Moderate
        Axis V: GAF = 50

[Her diagnoses are based on DSM-IV categorization and descriptions because there are copious evaluations and records dating back to the 1990's using that criteria].

Ms. Basso is currently without much psychiatric symptomatology except for her severe, chronic factitious disorder. She has falsified psychiatric and physical symptoms for years. Her motivation is likely based on a need to assume a sick role as well as to obtain attention and privileges she would not otherwise qualify for. I believe that her symptoms are intentionally produced or feigned and that her factitious disorder co-exists with malingering. Malingering is the intentional **conscious** productions of symptoms for secondary gain and in factitious disorder, symptoms are intentionally produced with the **unconscious** motive of assuming the patient role. Her physical symptoms of lower limb paralysis have been so consistent and profound that she has developed bilateral club feet.

I don't believe that she has a delusional disorder. It is more likely that incredible assertions she made in the recent and remote past were intentional and part of factitious disorder, malingering and attention seeking. Current treating experts who have known her for years do not believe that she is delusional or psychotic.

In my medical opinion, Ms. Basso understands that she is to be put to death on February 5, 2014 and what death means. Moreover, she understands why the state is imposing the penalty. She demonstrates a factual and rational understanding of her upcoming execution and reasons for it. Therefore, she should be considered **COMPETENT TO EXECUTE**.

Opinions rendered herein are based on my evaluation and information provided. Should additional information be made available, opinions are subject to modification.

If I may be of further assistance, call me.

Sincerely,

Mark S. Moeller, M.D.
Diplomate, American Board of Psychiatry and Neurology
Added qualifications in Forensic Psychiatry
Added qualifications in Geriatric Psychiatry
Added qualifications in Addiction Psychiatry

1                    STATE'S EXHIBIT NO. 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        DEFENDANT'S EXHIBIT NO. 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    DEFENDANT'S EXHIBIT NO. 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    DEFENDANT'S EXHIBIT NO. 3
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          DEFENDANT'S EXHIBIT NO. 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1        DEFENDANT'S EXHIBIT NO. 5

1              DEFENDANT'S EXHIBIT NO. 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   STATE OF TEXAS.        )

 2   COUNTY OF HARRIS       )

 3

 4              I, Arlene F. Webb, Official Court Reporter

 5   in and for the 232nd District Court of Harris County,

 6   Texas, do hereby certify that the following exhibits,

 7   offered into evidence during the GUILT/INNOCENCE AND

 8   PUNISHMENT PHASE in the above-entitled and numbered

 9   cause as set out herein before the Honorable Mary Lou

10   Keel, Judge of the 232nd District Court of Harris

11   County, Texas, and a jury trial, beginning March 21,

12   2011.

13              I further certify that the total cost for

14   the preparation of this Reporter's Record is $_____

15   and was paid/will be paid by Harris County.

16              WITNESS MY OFFICIAL HAND on this, the 21st

17   day of December, 2013.

18

19                            /s/ Arlene F. Webb
                              Official Court Reporter
20                            Certification No. 928
                              232nd Criminal District Court
21                            1201 Franklin, 16th Floor
                              Expiration Date: 12/31/14
22                            Houston, Texas 77002

23

24

25
```