IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUZANNE MARGARET BASSO, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL NO. H-14-213 |
| WILLIAM STEPHENS, Director, Texas Department of Criminal Justice-Correctional Institutions Division, | § § § § § | |
| Respondent. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Suzanne Margaret Basso is a Texas death-row inmate. She is scheduled for execution on February 5, 2014.

On January 30, 2014, Basso filed a petition for a writ of habeas corpus alleging that she is mentally ill and incompetent to be executed under the standards set by the United States Supreme Court in Ford v. Wainwright, 477 U.S. 399 (1986), and Panetti v. Quarterman, 551 U.S. 930, 948 (2007). On January 31, 2014, she filed a motion for a stay of execution. Although this case arises out of a murder committed years ago, it is undisputed that Basso raised this claim at the earliest opportunity under the Supreme Court's case law.[1]

---

[1] Basso filed her petition while her competency claim was still pending in the Texas Court of Criminal Appeals ("CCA"). While the claim was not ripe at the time it was filed, the Court

1

The United States Supreme Court has held that "'the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.'" Panetti, 551 U.S. at 934. This prohibition applies even if a prisoner was earlier competent to be held responsible for committing a crime and to be tried for it. Once a prisoner makes a "preliminary showing that his current mental state would bar his execution, the Eighth Amendment . . . entitles him to an adjudication to determine his condition." Id. at 934-35.

I. **Procedural and Factual Background**

In September 1999, Basso was convicted of capital murder and sentenced to death for murdering Louis "Buddy" Musso. The facts are set out in detail in this Court's memorandum and order denying Basso's original federal petition for a writ of habeas corpus. See Basso v. Quarterman, No. 07-cv-3047 (S.D. Tex. Jan. 26, 2009).

The CCA affirmed Basso's conviction and sentence. Basso v. State, No. 63,672 (Tex. Crim. App. Jan. 15, 2003), cert. denied, 540 U.S. 864 (2003), and denied her application for habeas corpus relief, Ex parte Basso, No. 63,672-01 (Tex. Crim. App. Sept. 20, 2006). On January 26, 2009, this Court denied Basso's first

---

acknowledges that Basso filed the petition in anticipation of the CCA's decision, and in recognition of the extremely time-sensitive nature of the proceeding. The CCA has since decided that Basso is competent, Basso v. State, No. AP-77,032 (Tex. Crim. App. Feb. 3, 2014), and the petition is now ripe for federal review.

2

federal petition for a writ of habeas corpus. The Fifth Circuit denied Basso's request for a certificate of appealability. Basso v. Thaler, No. 09-70012 (5th Cir. Jan. 11, 2010), cert. denied, 131 S.Ct. 181 (2010).

On October 1, 2013, Basso sought a competency hearing in the state trial court and filed a motion asking the state trial court to declare the Texas competency statute, TEX. CODE CRIM PROC. art. 46.05, unconstitutional. The state trial court denied that motion on December 13, 2013.

The court held an evidentiary hearing on December 13, 2013, at which the court received expert testimony by court appointed experts. Following that hearing, on January 14, 2014, the state trial court entered findings of fact and conclusions of law finding that Basso is competent to be executed. On February 3, 2014, the Texas Court of Criminal Appeals adopted the trial court's findings and denied relief. Basso v. State, No. AP-77,032 (Tex. Crim. App. Feb. 3, 2014).

## II. The Legal Standards

### A. The Anti-Terrorism and Effective Death Penalty Act

This petition is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly

3

established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Kitchens v. Johnson, 190 F.3d 698, 700 (5th Cir. 1999). For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." See Martin v. Cain, 246 F.3d 471, 475 (5th Cir.), cert. denied, 534 U.S. 885 (2001). Under the "contrary to" clause, this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" Dowthitt v. Johnson, 230 F.3d 733, 740-41 (5th Cir. 2000), cert. denied, 532 U.S. 915 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." Hoover v. Johnson, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." Neal v. Puckett, 239 F.3d 683, 696 (5th Cir. 2001), aff'd, 286 F.3d 230 (5th Cir. 2002) (en banc), cert. denied sub nom. Neal v. Epps, 537 U.S. 1104 (2003). The sole inquiry for a federal court under the "unreasonable application" prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" Id. (quoting Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997)); see also Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

5

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d)(2); Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000), cert. denied, 532 U.S. 1039 (2001). The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Jackson v. Anderson, 112 F.3d 823, 824-25 (5th Cir. 1997), cert. denied, 522 U.S. 1119 (1998).

B. **The Ford Standard**

In Ford v. Wainwright, 477 U.S. 399 (1986), the Supreme Court held that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." Id. at 410. A prisoner is incompetent to be executed when her "mental illness prevents [her] from comprehending the reasons for the penalty or its implications." Id. at 417. Once a petitioner makes a substantial threshold showing of insanity, she is entitled to a fair hearing on her competency to be executed in accord with fundamental fairness. Panetti v. Quarterman, 551 U.S. 930, 948 (2007) (citing Ford, 477 U.S. at 426). This includes the right to submit evidence and argument, including expert psychiatric evidence.

**III.     Analysis**

   **A.     Article 46.05**

In her first claim for relief, Basso argues that TEX. CODE CRIM PROC. art. 46.05 is unconstitutional. It is unnecessary for this Court to address the broad constitutionality of the statute.

The questions before this Court are whether Basso's state court competency proceedings comported with the due process requirements set out in Panetti and, if so, whether the state court's findings and conclusions were "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Kitchens v. Johnson, 190 F.3d 698, 700 (5th Cir. 1999). If the actual process provided to Basso comports with due process, then her constitutional rights were not violated. If the state court's findings and conclusions meet the reasonableness standards, then they are entitled to deference under the AEDPA.

Panetti's due process requirement merely requires that a person who makes a threshold showing that she is incompetent to be executed have an opportunity to develop her claim in state court, to present testimony and other evidence, and to have the assistance of counsel and experts. See Green v. Thaler, 699 F.3d 404, 413 (5th Cir. 2012). Basso does not dispute that she had an evidentiary

hearing at which she was able to submit records and testimony, including expert testimony, and that she was assisted by counsel. The state court hearing therefore provided sufficient due process, the proceeding met constitutional requirements, and the AEDPA applies.

Basso also argues that article 46.05 is unconstitutional because it places the burden on the petitioner to prove by a preponderance of the evidence that she is incompetent. As Basso acknowledges, however, "'the Supreme Court has never established who bears the burden of proof in a competency-to-be-executed claim.' . . . Thus, there is no 'clearly established' law for Section 2254 purposes . . .." Petitioner's Memorandum of Law (Document # 4) at 19 (quoting Coe v. Bell, 209 F.3d 815, 827 (6th Cir. 2000)). Because there is no clearly established law on this point, the state court's decision cannot be contrary to clearly established law. AEDPA thus requires deference to that decision.

### B. Competency To be Executed

During the state court competency hearing, the court received expert reports by Mark Moeller, M.D., a psychiatrist, and Walter Quijano, Ph.D., a clinical psychologist. Following the hearing, the trial court entered findings of fact and conclusions of law.

The State presented affidavits from Patricia Glass, Sally Knapp, and Diane Livanec, TDCJ correctional officers who have regular contact with Basso. Glass states that she interacts with

8

Basso and that Basso's conversation is appropriate. Basso threatened self-harm shortly after her arrival at the Estelle Unit, but resumed normal behavior after receiving attention by unit staff. Knapp and Livanec reported similar lucid conversations and lack of evidence of psychosis. Livanec noted that Basso has periodically acted out and claimed to hear voices, but states that Basso never acted as if she actually heard voices. CR at 98-99, 102, 104.[2]

Nathaniel Robertson, M.D., Basso's treating physician since November 2011, also submitted an affidavit. Dr. Robertson stated that Basso never related any auditory or visual hallucinations to him. Basso has had rational discussions with Robertson about a number of health-related issues. Id. at 100.

Sister Elizabeth Riebschlaeger, a Catholic nun, testified at the hearing. She is Basso's spiritual advisor.

Sister Riebschlaeger testified that Basso reported delusional facts about her life, including claims that she is cousins with Cardinal O'Malley of Boston, and that she was good friends with former New York Governor and Vice President of the United States Nelson Rockefeller and his wife, Happy. 1 RR at 21-23.[3] Basso also told Sister Riebschlaeger that she was beaten by the police

---

[2] "CR" refers to the Clerk's record.

[3] "RR" refers to the Reporter's Record of the competency hearing.

after her arrest for capital murder. Id. at 39-40.

State District Judge Mary Lou Keel presided over both Basso's trial and competency hearing. FF at 12.[4] The state court found that Drs. Moeller and Quijano, while both noting symptoms of mental illness, both concluded that Basso is competent to be executed. Id. at 11; 1 RR at 258. The court noted that a competency hearing was conducted at the time of Basso's trial in 1999. A jury found her competent to stand trial. FF at 13. During that competency hearing, two mental health professionals testified that Basso malingered symptoms of mental illness. Jerome Brown, Ph.D., testified that Basso had a history of using manipulative behavior to obtain her goals. He detected a pattern of deception in Basso's performance on tests and concluded that her efforts to present herself as mentally ill was deliberate and contrived. Melissa Ferguson, M.D., testified that Basso malingered auditory hallucinations that were inconsistent with actual psychosis. Id. at 14. The testimony of Drs. Brown and Ferguson were also noted in this Court's 2009 habeas corpus opinion. See Basso v. Quarterman, No. 07-cv-3047(S.D. Tex. Jan. 26, 2009) at 20-22.

At Basso's 2013 competency hearing, Basso testified on her own behalf. The court also heard expert testimony by Drs. Moeller and

---

[4] "FF" refers to the state trial court's findings of fact and conclusions of law, entered on January 14, 2014. The number refers to the numbered findings. The findings of fact are located at pages 106-17 of the Clerk's Record.

10

Quijano, and by licensed professional counselor Stephanie Kosut. Drs. Moeller and Quijano agreed that Basso is competent to be executed under the Ford standard.

The court found that Quijano based his conclusion on his interview and testing of Basso in October 2013 and his review of relevant records. Id. at 18. Moeller based his conclusion on his November 2013 interview of Basso, conversations with a psychiatrist who treated Basso over the past several years, and review of relevant records. Id. at 19.

The court found that Basso was diagnosed during her incarceration in TDCJ with major depressive disorder, recurrent, and borderline personality disorder. She was prescribed Prozac for depression. She was not receiving any antipsychotic medications at the time of her 2013 evaluations by Drs. Quijano and Moeller. Id. at 20-21. The court further found, based on statements by Basso, Moeller, and a TDCJ psychiatrist, that Basso was not having hallucinations or delusions during her 2013 competency evaluations and is not delusional or psychotic. Id. at 22.

Basso acknowledged at the hearing that she made untrue statements about her background. The court found that she knew the difference between the truth and a lie. Id. at 23-24; 1 RR at 258. The court further found that Basso has a history of malingering and engaging in attention-seeking behavior, and a history of falsifying physical and psychiatric symptoms. FF at 25.

11

Based on the hearing evidence, the court rejected Basso's claim that she could not remember her capital murder trial. Based on her history of malingering, the court found not credible Basso's claimed difficulty in understanding certain words or the rudiments of the competency hearing. Id. at 27-28.

During her clinical evaluation by Quijano, Basso took two IQ tests, the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), and the Wechsler Memory Scale-III ("WMS-III"). She scored a 55 on the WAIS-IV, and had scores ranging from 78 to 100 on the WMS-III. Quijano considered the WAIS-IV score, which is at the low end of the range for mild mental retardation, inconsistent with Basso's actions and behavior, and her vocabulary, flow of speech, and work history. 1 RR at 143, 152-55. Ms. Kosut, the licensed professional counselor who administered the tests, stated that the WAIS-IV score was unexpected. She found Basso to be articulate in ways that were inconsistent with an IQ of 55. Based on this evidence, the court fount the WAIS-IV score unreliable. Id. at 29-34.

The court found Sister Riebschlaeger's opinions regarding Basso's mental health unpersuasive because Riebschlaeger is not a mental health professional, the opinion was based on self-serving information provided by Basso, and Riebschlaeger acknowledged that some of her resollections of her visits with Basso may have been faulty. Id. at 37. The court also doubted Basso's self-reported

delusions based on their periodic nature and Basso's history of malingering. Id. at 38. Based on all the evidence, the court found that Basso has a factual and rational understanding of the fact of her upcoming execution and the reasons for the execution. Id. at 40-41.

All of the court's factual findings noted above are well-supported by the record. They are therefore entitled to deference under the AEDPA. Based on the court's well-grounded factual findings, the court's conclusion that Basso is competent under the standards of Ford and Panetti is not an unreasonable application of Supreme Court precedent.

Basso now argues that her competency is based on "synthetic competency," i.e. that she is competent only because she is medicated. Dr. Quijano testified that Basso is competent but, if taken off her medications would become psychotic and, possibly, incompetent. 1 RR at 189-92. She argues that one who is merely synthetically competent cannot, consistent with the Eighth Amendment, be executed.

Dr. Quijano is a clinical psychologist, but he is not a medical doctor. Dr. Moeller, who is a medical doctor, disagreed with Dr. Quijano's conclusion on this point. Dr. Moeller pointed out that Basso's medications were prescribed for mood disorders, not a delusional disorder. Id. at 212. He opined that she understands both the fact of her impending execution and the

13

reasons for it, including her own involvement in, and responsibility for, the murder. Id. at 242-47.

It is the province of the finder of fact "to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Roman v. Western Mfg., Inc., 691 F.3d 686, 692 (5th Cir. 2012) (internal quotation marks and citation omitted). In this case, the evidence strongly supports the state court's findings.

Both experts agreed that Basso is competent to be executed. The only area of disagreement on this point was that Dr. Quijano, who is not a medical doctor, opined that Basso would not be competent if taken off her medication while Dr. Moeller, who is a medical doctor, disagreed. The court was well within its bounds to find Dr. Moeller's opinion on this point more convincing.

The court was also well within its bounds as finder of fact in determining that Basso's claims of delusions are not credible. Basso has a long history of malingering symptoms. Those who have regular contact with her, including three correctional officers and her treating physician, reported seeing no evidence of delusional behavior from Basso.

In sum, the court's findings were reasonable based on the factual record, and its conclusion that Basso is competent to be executed is a reasonable application of Ford and Panetti to the facts of this case. Therefore, under the AEDPA, the state court's

judgment is entitled to deference, and Basso is not entitled to relief.

## IV. Certificate of Appealability

Basso has not requested a certificate of appealability ("COA"), but this court may determine whether she is entitled to this relief in light of the foregoing rulings. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA sua sponte. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued."). A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. See Whitehead v. Johnson, 157 F.3d 384, 388 (5th Cir. 1988); see also Hill v. Johnson, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also United States v. Kimler, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve

the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir.), cert. denied, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

Slack v. McDaniel, 529 U.S. 473, 484 (2000). "[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000), cert. dismissed, 531 U.S. 1134 (2001).

This court has carefully considered Basso's claims and concludes that they are foreclosed by clear, binding precedent. The court concludes that under such precedents Basso has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court therefore concludes that Basso is not entitled to a certificate of appealability on her claims.

## V. **Stay Of Execution**

Basso has also filed a motion for a stay of execution to allow this Court time to adjudicate her petition. Because this Court concludes that Basso is not entitled to relief and no stay is necessary to allow time to adjudicate the petition, Basso's motion

for a stay of execution is denied.

**VI. Conclusion and Order**

For the foregoing reasons, it is **ORDERED** as follows:

1. Petitioner Suzanne Margaret Basso's Petition for a Writ of Habeas Corpus (Document No. 1) is in all respects **DENIED** and Basso's Petition is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. Basso's Motion for a Stay of Execution (Document No. 3) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 3rd day of February, 2014.

                                            SIM LAKE
                         UNITED STATES DISTRICT JUDGE